UNITED STATES DISTRICT COURT
DISTRICT OF MONTANA

MATTHEW MCPHERSON, INDIVIDUALLY AND ON
BEHALF OF ALL OTHERS SIMILARLY SITUATED,

Plaintiff,

-v.-

WILLIAM O. BRONSON, PLLC,
DCI CREDIT SERVICES, INC.,

Defendant(s).

Civil Action No. CV-23-21-GF-BMM

**CLASS ACTION COMPLAINT**

**DEMAND FOR JURY TRIAL**

Plaintiff Matthew McPherson (hereinafter, "Plaintiff"), a Montana resident, brings this Class Action Complaint by and through his attorneys, against Defendants William O. Bronson, PLLC ("Bronson") and DCI Credit Services, Inc. ("DCI") (collectively, "Defendants"), individually and on behalf of a class of all others similarly situated, pursuant to Rule 23 of the Federal Rules of Civil Procedure, based upon information and belief of the Plaintiff's counsel, except for allegations specifically pertaining to the Plaintiff, which are based upon the Plaintiff's personal knowledge.

## INTRODUCTION/PRELIMINARY STATEMENT

1.      Congress enacted the Fair Debt Collection Practices Act (hereinafter "FDCPA" or "Act") in 1977 in response to the "abundant evidence of the use of abusive, deceptive, and unfair debt collection practices by many debt collectors." 15 U.S.C. §1692(a). At that time, Congress was concerned that "abusive debt collection practices contribute to the number of personal bankruptcies, to marital instability, to the loss of jobs, and to invasions of individual privacy." *Id.* Congress concluded that "existing laws…[we]re inadequate to protect consumers," and that "'the effective collection of debts" does not require "misrepresentation or other abusive debt collection practices." 15 U.S.C. §§ 1692(b) & (c).

1

2.      Congress explained that the purpose of the Act was not only to eliminate abusive debt collection practices, but also to "insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged." *Id.* § 1692(e). "After determining that the existing consumer protection laws ·were inadequate." *Id.* § l692(b), Congress gave consumers a private cause of action against debt collectors who fail to comply with the Act. *Id.* § 1692k.

## JURISDICTION AND VENUE

3.      The Court has jurisdiction over this class action pursuant to 28 U.S.C. § 1331 and 15 U.S.C. § 1692 et. seq. The Court has pendent jurisdiction over the State law claims in this action pursuant to 28 U.S.C. § 1367(a).

4.      Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b)(2), as this is where the Plaintiff resides and a substantial part of the events or omissions giving rise to the claims occurred.

## NATURE OF THE ACTION

5.      Plaintiff brings this class action on behalf of a class of Montana consumers under §1692 et seq. of Title 15 of the United States Code, commonly referred to as the FDCPA, and

6.      Plaintiff is seeking damages and declaratory relief.

## PARTIES

7.      Plaintiff is a resident of the State of Montana, County of Valley.

8.      Defendant Bronson is a "debt collector" as the phrase is defined in 15 U.S.C. § 1692(a)(6) and used in the FDCPA with an address at 733 32nd Ave, NE, Great Falls, MT, 59404.

9.    Upon information and belief, Defendant Bronson is a company that uses the mail, telephone, and facsimile and regularly engages in business the principal purpose of which is to attempt to collect debts alleged to be due another.

10.    Defendant DCI is a "debt collector" as the phrase is defined in 15 U.S.C. § 1692(a)(6) and used in the FDCPA with an address for service c/o URS Agents, LLC located at 1012 35th Avenue NE, Great Falls, MT, 59404.

11.    Upon information and belief, Defendant DCI is a company that uses the mail, telephone, and facsimile and regularly engages in business the principal purpose of which is to attempt to collect debts alleged to be due another.

## CLASS ALLEGATIONS

12.    Plaintiff brings these claims on behalf of the following class, pursuant to Fed. R. Civ. P. 23(a) and 23(b)(3).

13.    The Class consists of:

    a.    all individuals with addresses in the State of Montana;

    b.    about whom the Defendant Bronson sent a collection letter attempting to collect a consumer debt;

    c.    on behalf of the Defendant DCI;

    d.    which included an improper writing requirement for disputing the debt;

    e.    and which was sent on a date on or after the CFPB Regulation F took effect on November 30, 2021;

    f.    which failed to include all necessary information and notices under 12 CFR §§ 1006.34 and/or 1004.42; and

g. which letter was sent on or after a date one (1) year prior to the filing of this action and on or before a date twenty-one (2l) days after the filing of this action.

14.    The identities of all class members are readily ascertainable from the records of the Defendant and those companies and entities on whose behalf it attempts to collect and/or has purchased debts.

15.    Excluded from the Plaintiff Class are the Defendant and all officers, members, partners, managers, directors and employees of the Defendant and their respective immediate families, and legal counsel for all parties to this action, and all members of their immediate families.

16.    There are questions of law and fact common to the Plaintiff Class, which common issues predominate over any issues involving only individual class members. The principal issue is whether the Defendant's written communications to consumers at their employers' or former employers' addresses, in the form attached as Exhibit A, violate 15 U.S.C. §§1692e, 1692f, and/or 1692g.

17.    Plaintiff's claims are typical of the class members, as all are based upon the same facts and legal theories. Plaintiff will fairly and adequately protect the interests of the Plaintiff Class defined in this complaint. Plaintiff has retained counsel with experience in handling consumer lawsuits, complex legal issues, and class actions, and neither the Plaintiff, nor his attorneys, have any interests that might cause them not to vigorously pursue this action.

18.    This action has been brought, and may properly be maintained, as a class action pursuant to the provisions of Rule 23 of the Federal Rules of Civil Procedure because there is a well-defined community interest in the litigation:

a. **<u>Numerosity:</u>** Plaintiff is informed and believes, and on that basis alleges, that the Plaintiff Class defined above is so numerous that joinder of all members would be impractical.

b. **<u>Common Questions Predominate:</u>** Common questions of law and fact exist as to all members of the Plaintiff Class and those questions predominate over any questions or issues involving only individual class members. The principal issue is whether the Defendants' written communications to consumers at their employers' or former employers' addresses, in the form attached as Exhibit A, violate 15 USC §1692e, 1692f, and/or 1692g.

c. **<u>Typicality:</u>** Plaintiff's claims are typical of the claims of the class members. Plaintiff and all members of the Plaintiff Class have claims arising out of the Defendants' common uniform course of conduct complained of herein.

d. **<u>Adequacy:</u>** Plaintiff will fairly and adequately protect the interests of the class members insofar as the Plaintiff has no interests that are averse to the absent class members. Plaintiff is committed to vigorously litigating this matter. Plaintiff has also retained counsel experienced in handling consumer lawsuits, complex legal issues, and class actions. Neither the Plaintiff, nor his counsel, have any interests that might cause them not to vigorously pursue the instant class action lawsuit.

e. **<u>Superiority:</u>** A class action is superior to the other available means for the fair and efficient adjudication of this controversy because individual joinder of all members would be impracticable. Class action treatment will permit a large number of similarly situated persons to prosecute their common claims in a single

forum efficiently and without unnecessary duplication of effort and expense that

individual actions would engender.

19.    Certification of a class under Rule 23(b)(3) of the Federal Rules of Civil Procedure

is also appropriate in that the questions of law and fact common to members of the Plaintiff

Class predominate over any questions affecting an individual member, and a class action is

superior to other available methods for the fair and efficient adjudication of the controversy.

20.    Depending on the outcome of further investigation and discovery, Plaintiff may, at

the time of class certification motion, seek to certify a class(es) only as to particular issues

pursuant to Fed. R. Civ. P. 23(c)(4).

## FACTUAL ALLEGATIONS

21.    Plaintiff repeats, reiterates and incorporates the allegations contained in the

paragraphs above with the same force and effect as if the same were set forth at length herein.

22.    Some time prior to May 16, 2022 an obligation was allegedly incurred to non-party

Frances Mahon Deaconess Hospital ("Hospital").

23.    The Hospital obligation arose out of transaction(s) in which money, property,

insurance or services, which are the subject of the transaction, were primarily for personal,

family or household purposes, specifically a personal medical debt.

24.    The alleged Hospital obligation is a "debt" as defined by 15 U.S.C.§ 1692a(5).

25.    Upon information and belief, the original creditor transferred the defaulted debt to

the Defendant DCI for the purpose of debt collection. Therefore, Defendant DCI is a "debt

collector" as defined by 15 U.S.C. 1692a (6).

26.    Defendant DCI contracted the Defendant Bronson to collect the allegedly defaulted

debt. Therefore, Defendant Bronson is a "debt collector" as defined by 15 U.S.C. § 1692a (6).

27.     Defendant DCI has policies and procedures in place that govern the Defendant Bronson's debt collection practices, specifically with regard to collecting the subject debt, thereby evidencing the Defendant DCI's control over the Defendant Bronson's collection practices.

28.     By virtue of the relationship between the two Defendants, Defendant DCI exercised control over the Defendant Bronson while the latter was engaged in collecting the subject debt on behalf of the former.

29.     Therefore, Defendant DCI should be held vicariously liable for any and all violations committed by the Defendant Bronson

*Violation – Collection Letter*

30.     On or about May 16, 2022, Defendant Bronson sent Plaintiff a collection letter ("Letter") regarding the alleged debt. *See* Letter attached as **Exhibit A**.

31.     Plaintiff disputes the fact that this account was sent to a debt collector to begin with as he had previously agreed to pay $50 per month and was making those payments timely.

32.     Furthermore, this Letter threatens legal action despite the fact the Plaintiff was paying the debt.

33.     Pursuant to 15 U.S.C. § 1692l(d) "Except as provided in section 1029(a) of the Consumer Financial Protection Act of 2010 (12 U.S.C. 5519(a)), the Bureau may prescribe rules with respect to the collection of debts by debt collectors, as defined in this subchapter."

34.     Accordingly, the CFPB prepared and issued rules prescribed under 12 CFR § 1006, commonly referred to as Regulation F.

35.     Defendant's Letter fails to include all of the information necessitated by Regulation F, in violation of the FDCPA.

36.     12 CFR § 1006.1 provides:

(a) *Authority*. This part, known as Regulation F, is issued by the Bureau of Consumer Financial Protection pursuant to section 814(d) and 817 of the Fair Debt Collection Practices Act (FDCPA or Act), 155 U.S.C. 1692/(d), 1692o; title X of the Dodd-Frank Wall Street Reform and Consumer Protection Act (Dodd-Frank Act), 12 U.S.C. 5481 *et seq.*; and paragraph (b)(1) of section 104 of the Electronic Signatures in Global and National Commerce Act (E-SIGN Act), 15 U.S.C. 7004.

(b) *Purpose.* This part carries out the purposes of the FDCPA, which include eliminating abusive debt collection practices by debt collectors, ensuring that debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and promoting consistent State action to protect consumers against debt collection abuses. This part also prescribes requirements to ensure that certain features of debt collection are disclosed fully, accurately, and effectively to consumers in a manner that permits consumers to understand the costs, benefits, and risks associated with debt collection in light of the facts and circumstances.

(c) *Coverage.*

   a.  Except as provided in § 1006.108 and appendix A of this part regarding applications for State exemptions from the FDCPA, this part applies to debt collectors, as defined in § 1006.2(i), other than a person excluded from coverage by section 1029(a) of the Consumer Financial Protection Act of 2010, title X of the Dodd-Frank Act (12 U.S.C. 5519(a)).

   b.  Section 1006.34(c)(2)(iii) and (3)(iv) applies to debt collectors only when they are collecting debt related to a consumer financial product or service as defined in § 1006.2(f).

37.     12 CFR § 1006.18(e) requires:

   a.  *Initial Communications*. A debt collector must disclose in its initial communication with a consumer that the debt collector is attempting to collect a debt and that any information obtained will be used for that purpose.

38.     12 CFR § 1006.22 states that "[a] debt collector must not use unfair or unconscionable means to collect any debt, including, but not limited to, the conduct described in paragraphs (b) through (f) of this section.

39.    12 CFR § 1006.34(c) further states:

***Validation information***. Pursuant to paragraph (a)(1) of this section, a debt collector must provide the following validation information.

> (1) ***Debt collector communication disclosure***. The statement required by § 1006.18(e)

> (2) ***Information about the debt***. Except as provided in paragraph (c)(5) of this section:

>> 1.    The debt collector's name and the mailing address at which the debt collector accepts disputes and requests for original creditor information.

>> 2.    The consumer's name and mailing address

>> 3.    If the debt collector is collecting a debt related to a consumer financial product or service as defined in § 1006.2(f), the name of the creditor to whom the debt was owed on the itemization date.

>> 4.    The account number, if any, associated with the debt on the itemization date, or a truncated version of that number.

>> 5.    The name of the creditor to whom the debt is currently owed.

>> 6.    The itemization date.

>> 7.    The amount of the debt on the itemization date.

>> 8.    An itemization of the current amount of the debt reflecting interest, fees, payments, and credits since the itemization date. A debt collector may disclose the itemization on a separate page provided in the same communication with a validation notice, if the debt collector includes on the validation notice, where the itemization would have appeared, a statement referring to that separate page.

>> 9.    The current amount of the debt.

> (3) ***Information about consumer protections***.

(i)        The date that the debt collector will consider the end date of the validation period and a statement that, if the consumer notifies the debt collector in writing on or before that date that the debt, or any portion of the debt, is disputed, the debt collector must cease collection of the debt, or the disputed portion of the debt, until the debt collector sends the consumer either verification of the debt or a copy of a judgment.

(ii)      The date that the debt collector will consider the end date of the validation period and a statement that, if the consumer requests in writing on or before that date the name and address of the original creditor, the debt collector must cease collection of the debt until the debt collector sends the consumer the name and address of the original creditor, if different from the current creditor.

(iii)     The date that the debt collector will consider the end date of the validation period and a statement that, unless the consumer contacts the debt collector to dispute the validity of the debt, or any portion of the debt, on or before that date, the debt collector will assume that the debt is valid.

(iv)     If the debt collector is collecting debt related to a consumer financial product or service as defined in § 1006.2(f), a statement that informs the consumer that additional information regarding consumer protections in debt collection is available on the Bureau's website at www.cfpb.gov/debt-collection.

(v)      If the debt collector sends the validation notice electronically, a statement explaining how a consumer can, as described in paragraphs (c)(4)(i) and (ii) of this section, dispute the debt or request original-creditor information electronically.

(4) ***Consumer-response information.*** The following information, segregated from the validation information required by paragraphs (c)(1) through (3) of this section and from any optional information included pursuant to paragraphs (d)(3)(i) and (ii), (d)(3)(iii)(A), (d)(3)(iv) and (v), (d)(3)(vii) and (viii) of this section, and, if provided on a validation notice, located at the bottom of the notice under the headings, "How do you want to respond?" and "Check all that apply:":

(i)        ***Dispute prompts.*** The following statements, listed in the following order, and using the following phrasing or substantially similar phrasing, each next to a prompt:

      i.    "I want to dispute the debt because I think:";

      ii.   "This is not my debt.";

      iii.  "The amount is wrong."; and

      iv.  "Other (please describe on reverse or attach additional information)."

  (ii)   ***Original-creditor information prompt***. The statement, "I want you to send me the name and address of the original creditor.", using that phrase or a substantially similar phrase next to a prompt.

  (iii)  ***Mailing addresses***. Mailing addresses for the consumer and the debt collector, which are the debt collector's and the consumer's names and mailing addresses as disclosed pursuant to § 1006.34(c)(2)(i) and (ii).

40.    12 CFR § 1006.34(d)(1) further states that "[t]he validation information required by paragraph (c) of this section must be clear and conspicuous."

41.    Additionally, 12 CFR § 1006.42 requires:

(a) ***Sending required disclosures –***

  (1) ***In General.*** A debt collector who sends disclosures required by the Act and this part in writing or electronically must do so in a manner that is reasonably expected to provide actual notice, and in a form that the consumer may keep and access later.

42.    Defendant's May 16, 2022 correspondence fails to include all of the information described above.

43.    The Letter failed to include multiple disclosures and statements required pursuant the rules promulgated by the CFPB.

44.    Specifically, the Letter fails to include an itemization date of any kind, any reference to an itemization date or a statement specifying the creditor on such date in violation of 12 CFR § 1006.34(c)(2).

45.    The Letter further fails to provide any itemization or other breakdown of the debt with regard to interest, fees, payments, and credits since the itemization date as required by 1006.34(c).

46.    Additionally, the Letter failed to provide any of the specific dates required under 12 CFR § 1006.34(c)(3) and thus it failed to properly advise Plaintiff of the relevant information concerning consumer protections.

47.    The Letter further failed to provide the necessary Consumer-response information required under 12 CFR § 1006.34(c)(4).

48.    In addition to failing to provide all of the information required by the various subsections of 12 CFR § 1006.34(c), the Letter also failed to clearly and conspicuously provide the validation information generally, in violation of 12 CFR § 1006.34(d).

49.    Defendant also failed to provide the required disclosures in a manner that was reasonably expected to provide actual notice in violation of 12 CFR § 1006.42.

50.    Finally, the Letter demanded a written notification only as a method of disputing the debt which is completely contradictory of both the original statute and the CFPB required language.

51.    Defendant's omissions and misrepresentations cause a negative shadow over its debt collection practice in general.

52.    When they go astray, debt collectors often introduce a tacit element of confusion into their dunning letter to leave the consumer somewhat uninformed.

53.    This strategy helps debt collectors to achieve leverage over consumers by keeping key pieces of information away from them.

54.    To that end, one important element of consumer protection revolves around keeping the consumer informed.

55.    When a consumer has as much information as the debt collector, they are most capable of handling repayment in full or part, disputing the debt, or otherwise communicating with the debt collector on a more equal playing field.

56.    However, when a debt collector withholds key information about the debt from the consumer, they encourage rash decision-making and consumers are left without any power to face a debt collector in a meaningful way.

57.    Accordingly, when a consumer is faced with something less than the total story behind owing a debt, they often give up and choose to pay an unwarranted debt to avoid further trouble.

58.    As a result of Defendant's multiple FDCPA violations, Plaintiff was unable to evaluate his options of how to handle this debt.

59.    Because of this, Plaintiff expended time, money, and effort in determining the proper course of action.

60.    Plaintiff was extremely upset and frustrated from getting this letter and feared being sued, despite making his payments.

61.    Furthermore, the Plaintiff disputes this debt being placed with a debt collector and the inclusion of the required information not only could have shed some light on this alleged debt but would have given him the proper mechanisms to dispute the debt.

62.    These violations by Defendant were knowing, willful, negligent, and/or intentional, and Defendant did not maintain procedures reasonably adapted to avoid such violations.

63.     Knowing the state of affairs and the swift tricks that debt collectors attempt against consumers, Congress passed laws to protect consumers.

64.     Congress is empowered to pass laws and is well-positioned to create laws that will better society at large.

65.     Congress further empowered the CFPB to promulgate rules for debt collectors to follow in their attempts to collect a debt.

66.     As noted above, the CFPB set forth a series of rules under Regulation F, the primary purpose of such rules to ensure that the consumer is completely advised as to the status of the debt and the same were prepared with the least sophisticated consumer in mind.

67.     As it relates to this case, Congress identified a concrete and particularized harm with a close common-law analogue of the traditional torts of fraud, negligent misrepresentation, negligent infliction of emotional distress, and conversion.

68.     Defendant's debt collection efforts with respect to this alleged debt from Plaintiff caused Plaintiff to suffer concrete and particularized harm, inter alia, because the FDCPA provides Plaintiff with the legally protected right to not be misled or treated unfairly with respect to any action regarding the collection of any consumer debt.

69.     Defendant's violations were material misrepresentations because they are likely to affect Plaintiff's choice or conduct regarding how to respond to an outstanding debt claim and are likely to mislead Plaintiff, who was acting reasonably under the circumstances.

70.     Specifically, Defendant's careless, deceptive, misleading, and unfair representations and/or omissions with respect to its collection efforts were material misrepresentations that affected and frustrated Plaintiff's ability to intelligently respond to Defendant's collection efforts.

71.    Plaintiff was confused and misled to his detriment by the statements in the Letter and relied on the contents of the Letter to his detriment.

72.    Plaintiff would have pursued a different course of action were it not for Defendant's statutory violations.

73.    Because of this, Plaintiff expended time and money in determining the proper course of action.

74.    In reliance on the Letter, Plaintiff expended time and money in an effort to mitigate the risk of future financial harm in the form of dominion and control over her funds.

75.    In addition, Plaintiff suffered emotional and physical harm because of Defendant's improper acts, including, but not limited to, fear, anxiety, stress, increased heartrate, and difficulty with sleep.

76.    Defendant's deceptive, misleading, and unfair representations with respect to its collection efforts were material misrepresentations that affected and frustrated Plaintiff's ability to intelligently respond to Defendant's demand for payment of this debt.

77.    Defendant's actions created an appreciable risk to Plaintiff of being unable to properly respond or handle Defendant's debt collection.

78.    When a debt collector fails to effectively inform the consumer of their rights and legal status of their debts, in violation of statutory law, the debt collector has harmed the consumer.

79.    Defendant's Letter failed to include all necessary information, including but not limited to specific information regarding the debt and Plaintiff's rights in connection with the same.

80.     Defendant's Letter also contained misleading and false information, including but not limited to specific information regarding how a debt can be disputed.

81.     As a result of Defendant's deceptive, misleading, and false debt collection practices, Plaintiff has been damaged.

82.     Defendant's actions created an appreciable risk to Plaintiff of being unable to properly respond or handle Defendant's debt collection.

83.     Plaintiff was confused and missed to his detriment by the statements and/or omissions in the dunning letter, and relied on the contents of the letter to his detriment.

84.     As a result of Defendant's deceptive, misleading, unfair, unconscionable, and false debt collection practices, Plaintiff has been damaged.

85.     Moreover, as a result of the Defendant's violations, Plaintiff has suffered emotional distress, including, but not limited to, anxiety, stress and increased heartrate.

86.     Congress is empowered to pass laws and is well-positioned to create laws that will better society at large.

87.     The harms caused by the Defendants have a close relationship to harms traditionally recognized as providing a basis for a lawsuit in American courts.

88.     As it relates to this case, the common-law analogues are to the traditional torts of fraud, misrepresentation, negligent infliction of emotional distress, conversion, invasion of privacy, disclosure of private information and defamation.

89.     For purposes of this action, only a close relationship to common-law harm is needed, not an exact duplicate.

90.     Plaintiff is entitled to receive a straightforward G-Notice as required by the FDCPA.

91.    Defendant failed to effectively inform the Plaintiff of this information, and in fact, attempted to overshadow and/or conceal it in violation of the law.

92.    These violations by the Defendant were knowing, willful, negligent and/or intentional, and the Defendant did not maintain procedures reasonably adopted to avoid any such violations.

93.    Defendant's collection efforts with respect to this alleged debt from the Plaintiff caused the Plaintiff to suffer concrete and particularized harm, inter alia, because the FDCPA provides the Plaintiff with the legally protected right not to be misled or treated unfairly with respect to any action regarding the collection of any consumer debt.

94.    Defendant's deceptive, misleading, and unfair representations with respect to its collection efforts were material misrepresentations that affected and frustrated the Plaintiff's ability to intelligently respond to the Defendant's collection efforts because the Plaintiff could not adequately respond to the Defendant's demand for payment of this debt.

95.    Defendant's actions created an appreciable risk to the Plaintiff of being unable to properly respond to, or handle, Defendant's debt collection.

96.    Plaintiff was misled to his detriment by the statements in the Letter, and relied on the contents of the Letter to his detriment.

97.    Because of the Defendant's actions, the funds the Plaintiff could have used to pay all or part of the alleged debt were prioritized elsewhere.

98.    Plaintiff would have pursued a different course of action were it not for the Defendant's violations.

99.    As a result of the Defendant's deceptive, misleading and false debt collection practices, Plaintiff has been damaged.

## COUNT I

**VIOLATIONS OF THE FAIR DEBT COLLECTION PRACTICES ACT**
**15 U.S.C. § 1692e *et seq.***

100.    Plaintiff repeats, reiterates, and incorporates the allegations contained in the paragraphs above with the same force and effect as if the same were set forth at length herein.

101.    Defendant's debt collection efforts attempted and/or directed towards Plaintiff violated various provisions of the FDCPA, including but not limited to 15 U.S.C. § 1692e.

102.    Pursuant to 15 U.S.C. § 1692e, a debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt.

103.    Defendant violated said section by:

a.    In that the Letter omits a required representation of the character, amount, and/or legal status of the debt in violation of § 1692e(2)(A);

b.    By failing to include all of the necessary information regarding the debt, including the itemizations date, the name of the creditor to whom the debt was owed on the itemization date, the total amount due at the itemization date, and an itemization of the current amount of debt reflecting interest, fees, payments, and credits since the itemization date in violation of § 1006.34(c)(2);

c.    By failing to include any specification as to the dates that the validation period would end in violation of § 1006.34(c)(3);

d.    By failing to include the dispute prompts prepared by the CFPB, or anything resembling the same, in violation of § 1006.34(c)(4); and

e.    By making a false and misleading representation in violation of § 1692e(10).

104.    By reason thereof, Defendant is liable to the Plaintiff for judgment that the Defendant's conduct violated Section 1692e *et seq.* of the FDCPA, and the Plaintiff is entitled to actual damages, statutory damages, costs, and attorneys' fees.

## COUNT II

### VIOLATIONS OF THE FAIR DEBT COLLECTION PRACTICES ACT
### 15 U.S.C.  § 1692f *et seq.*

105.    Plaintiff repeats the allegations contained in the above paragraphs as if set forth herein.

106.    Defendant's debt collection efforts attempted and/or directed towards the Plaintiff violated various provisions of the FDCPA, including but not limited to 15 U.S.C. § 1692f.

107.    Pursuant to 15 U.S.C. §1692f, a debt collector may not use unfair or unconscionable means to collect or attempt to collect any debt.

108.    Defendant violated §1692f:

    a.   By omitting a material terms and notices from the dunning letter to disadvantage the Plaintiff from making an educated decision regarding the subject debt;

    b.   By sending a collection letter threatening legal action, despite the fact the Plaintiff was making payments.

109.    By reason thereof, Defendant is liable to Plaintiff for judgment in that Defendant's conduct violated Section 1692f et seq. of the FDCPA, actual damages, statutory damages, costs and attorneys' fees.

## COUNT III

### VIOLATIONS OF THE FAIR DEBT COLLECTIONS PRACTICES ACT

**15 U.S.C. § 1692g** *et seq.*

110.    Plaintiff repeats, reiterates, and incorporates the allegations contained in the paragraphs above herein with the same force and effect as if the same were set forth at length.

111.    Defendant's debt collection efforts attempted and/or directed towards the Plaintiff violated various provisions of the FDCPA, including, but not limited to, 15 U.S.C. § 1692g.

112.    Pursuant to 15 U.S.C. § 1692g(a)(1) and (2), a debt collector must provide notice of a debt, including the amount of the debt and the name of the creditor to whom the debt is owed.

113.    Defendant violated § 1692g(a):

   a.    As the Letter fails to include all the information required under Reg F to be considered a valid initial collection letter.

   b.    Threating a lawsuit, despite the Plaintiff paying the debt monthly.

114.    By reason thereof, Defendant is liable to Plaintiff for judgment in that Defendant's conduct violated Section 1692g of the FDCPA, actual damages, statutory damages, costs, and attorneys' fees.

## DEMAND FOR TRIAL BY JURY

115.    Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiff hereby requests a trial by jury on all issues so triable.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff Matthew McPherson, individually and on behalf of all others similarly situated, demands judgment from the Defendants as follows:

1.    Declaring that this action is properly maintainable as a Class Action and certifying the Plaintiff as Class representative, and the undersigned counsel, as Class Counsel;

2.      Awarding the Plaintiff and the Class statutory damages;

3.      Awarding the Plaintiff and the Class actual damages;

4.      Awarding the Plaintiff costs of this Action, including reasonable attorneys' fees and expenses;

5.      Awarding pre-judgment interest and post-judgment interest; and


6.      Awarding the Plaintiff and the Class such other and further relief as this Court may deem just and proper.

Dated:  May 15, 2023                    Respectfully Submitted,

                                        */s/ Dawn M. McCraw*
                                        Dawn M. McCraw
                                        **CONSUMER ATTORNEYS**
                                        8245 N. 85th Way
                                        Scottsdale, AZ 85258
                                        T: (602)-807-1527
                                        E: dmccraw@consumerattorneys.com
                                        Attorneys For Plaintiff